Argued November 20, 1918, affirmed January 28, 1919.

## ANDREW *v.* OREGON-WASH. R. & N. Co.*

(178 Pac. 181.)

**Damages—Elements—Loss of Property—Evidence.**

1. In action for injuries and loss of property by railroad's foreman of section gang, court properly refused to allow plaintiff to answer whether he made any profit out of boarding men on his outfit train, with which another train collided, his claim being for reasonable value of his lost goods.

**Master and Servant—Loss of Property—Evidence.**

2. In action for loss of property by railroad's foreman of section gang when his outfit train was run into by another, complaint being that railroad's negligence resulted in destruction or theft of plaintiff's property, court properly refused to allow plaintiff to show that after collision he demanded his property from railroad's claim agent.

**Evidence—Loss of Property—Res Gestae.**

3. In action against railroad by foreman of section gang who was injured and lost his property when his outfit train was run into by another, evidence that belongings of crew were gathered up, put into bundles, and checked to a point as baggage, etc., *held* properly submitted to jury as part of the *res gestae* on issue of the destruction of the property.

**Master and Servant—Injuries—Pleading and Proof.**

4. In action for injuries and loss of property by railroad's foreman of section gang in collision between his outfit train and a freight, as against general charges of negligence, railroad was entitled to show condition of brakes of freight and care it took to equip with such means of stopping.

**Appeal and Error—Harmless Error—Evidence.**

5. In action for injury and loss of property by railroad's foreman of section gang in collision between his outfit train and a freight, any error in admission of railroad's evidence that freight's air-brakes were tested *held* favorable to plaintiff.

**Trial—Instructions—Repetition.**

6. A requested instruction was properly refused in so far as it was covered by charge as given.

[As to propriety of requesting or giving numerous or lengthy instructions, see note in Ann. Cas. 1918A, 1091.]

**Trial—Instructions—Support by Pleadings.**

7. In action for injuries and loss of property by railroad's foreman of section gang in collision between his outfit train and a freight, portion of plaintiff's requested charge *held* inapplicable, and properly refused as not supported by any charge in complaint of negligence by failure to keep lookout on freight.

---

*For a review of the authorities passing on the question of duties of master and servant with regard to rules promulgated for the safe conduct of a business, see notes in 43 L. R. A. 305 and 9 L. R. A. (N. S.) 972.    REPORTER.

**Trial—Instruction—Assumption of Issuable Fact.**

8. In action for injuries and loss of money by railroad's foreman of section gang when his outfit train was struck by a freight, plaintiff's requested instruction *held* erroneous because assuming that goods for which he claimed damages were rightfully on train, a point challenged by answer.

**Pleading—Trial—Conclusion of Law—Instruction.**

9. Allegation, in complaint of railroad's foreman of section gang suing for personal injury and loss of goods in collision between his outfit train and a freight, that while outfit train was standing, railroad in violation of its rules failed to stop freight was a mere conclusion of law, not calling for instruction in respect to violation of rules.

**Master and Servant—Injury to Servant—Pleading—Rules of Employment.**

10. Where rules of employing company required a certain line of conduct, and injured servant's pleading shows a violation of such rules, their text may be shown in connection with conduct involved which is declared to be an infraction of them.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 1.

The plaintiff avers in substance that on January 28, 1916, he was employed by the defendant railway company as an assistant foreman of an extra section gang No. 13; that while he was being carried on board of one of its construction trains from The Dalles to a point near Arlington, the train was stalled en route at Tumwater station and while thus at a standstill a freight train overtook it and collided with it, inflicting upon the plaintiff certain injuries, for which he claims damages. In addition thereto, for further cause of action he claims that he had on board the train certain personal property consisting of clothes, toilet articles, gold watch and chain, diamond ring, books, bedding, clock, etc., as well as $200 in money, besides sundry kitchen utensils, groceries and provisions, all of which he says were destroyed by the collision or stolen from the wreck.

As grounds of negligence which he imputes to the defendant, he alleges the following: ,

"1. In driving said freight train No. 24 into said outfit train No. 256 and causing it to collide therewith.

"2. In failing to observe reasonable care in the operation of train No. 24 to avoid said collision after the defendant by its trainmen became aware or should have become aware that the signals were against them.

"3. In failing to exercise a reasonable care in the operation of train No. 24 to avoid the said collision after the defendant by its trainmen on said train No. 24 had become aware of the presence of train No. 256 stalled in the same track on the defendant's main line as aforesaid.

"4. In failing to send a flagman back with stop signals soon enough or to a sufficient distance to insure full and every protection to train No. 256 after it became stalled under circumstances in which it might be overtaken by another train."

This matter he applies to all the causes of action and as to the loss of property he adds a fifth specification, as follows:

"5. In failing and neglecting at the time and place of said wreck, and in defiance of defendant's own rules and regulation to employ due or any vigilance in stationing watchmen, or making arrangements for the protection of said property on said train No. 256 against the looting and plundering of said wreckage."

The answer admits the plaintiff's employment and the fact of the collision, but otherwise denies the complaint. As to the claim for loss of property, the defendant avers as new matter substantially that the plaintiff had put his chattels on the train without any request from the defendant and without paying the lawful freight rate thereon, with intent to have them transported without liability for carriage on his part.

This new matter is denied by the reply. A jury trial resulted in a verdict and judgment for the defendant, and the plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. F. S. Senn* and *Mr. John R. Downes,* with an oral argument by *Mr. Senn.*

For respondent there was a brief over the names of *Mr. W. A. Robbins* and *Mr. A. C. Spencer,* with an oral argument by *Mr. Robbins.*

BURNETT, J.—1. It is assigned as error that the plaintiff having testified that he kept tobacco and things of that kind for sale to other employees, the court refused to allow him to answer whether he made any profit out of boarding the men. This ruling was correct, for the claim was for the reasonable value of the goods themselves and it would be immaterial to inquire whether he was making a profitable use of them or not. He claims nothing for loss of profits in any venture in which he employed his property.

2. Another claim of error was to the effect that the court refused to allow the plaintiff to show that from eighteen to twenty days after the collision he demanded his property from the claim agent of the company. The essence of the complaint is that the negligence of the company resulted in the destruction or theft of the property to the damage of the plaintiff. His demand made subsequently for the return of the property would neither enhance nor diminish his damages for the grievances described in his complaint..

3. It appears from the record substantially that the collision resulted in overturning some of the cars in the train upon which the plaintiff was riding; that the gang of workmen of which he was the assistant fore-

man and a member, gathered the belongings of the crew
and put them into bundles; that the whole band of
laborers, including the plaintiff, and their goods were
taken back to The Dalles, where the packages together
with some trunks, one of which corresponded in de-
scription to a trunk in which the plaintiff said his
money was locked, were checked to Portland as bag-
gage and the checks were delivered to the different
members of the crew of laborers, including the plaintiff
himself; that the stuff was taken to Portland and there
surrendered to the holders of the checks as ordinary
baggage. The remaining exceptions to the evidence
relate to the details of this transaction. It is not pre-
tended that this was conclusive upon the plaintiff, but
it has value as part of the *res gestae* tending to show
that as the crew was traveling together as one body
of men, it, including the plaintiff, was treated as such
by the company. Substantially all of their belongings
were gathered together by the men themselves and they
were all together, men and baggage, returned to Port-
land. This was entitled to go to the jury for what it
was worth on the issue of the destruction of property.

4, 5. The plaintiff complains that the court was
wrong in allowing the defendant to show that at The
Dalles the apparatus for furnishing air to the brakes
on the cars composing the freight train, was tested to
see if it was in proper working order. The second and
third charges of negligence are in very general terms,
to the effect that the defendant failed to observe reason-
able care in the operation of the freight train to avoid
the collision. As against these charges, so general in
their terms, the defendant was entitled to show the con-
dition of its brakes and the care it took thus to equip
itself with suitable means to stop the train. No harm-
ful error can be predicated on the reception of this evi-
dence. If it should appear that being thus provided,

its employees nevertheless failed to use the brakes, this testimony would only tend to heighten the defendant's negligence and would thus be advantageous to the plaintiff.

6, 7. Another assignment is the refusal of the court to instruct the jury as follows:

"It was the duty of the defendant railway company to exercise reasonable care in the operation of its trains; it was its duty to exercise reasonable care in dispatching its trains, so that they would not be operated so closely together as to endanger the lives of its employees. It was the duty of the engineers to keep a lookout and to ascertain whether the track was clear, and if the engineer knew or ought to have known by the exercise of ordinary care that there was a train ahead with which he was liable to collide, it was the duty of this engineer to keep back such a distance or to keep his train under such control so as to avoid a collision, and I instruct you that the fact that this collision occurred may be taken into consideration by you in arriving at your conclusion whether or not the defendant company was guilty of negligence. The fact that these trains collided and the circumstances causing the collision may be considered by you in arriving at your conclusion as to whether or not the company was negligent."

The court did instruct the jury in the charge as to the effect of the collision occurring between the two trains under the management of the defendant, substantially as the plaintiff requested. The remaining part of this request is inapplicable because it was not charged in the complaint as a ground of negligence that there was a failure to keep a lookout on the freight train.

8. In the tenth assignment of error, complaint is made of the failure of the court to instruct in the precise language of the plaintiff's request, about the personal injuries. But this ground, too, was covered by

the general charge of the court. In this assignment also is included the following language:

"I instruct you that he is also entitled to recover for the loss of any money which you may find he lost in this wreck, also for the value of his personal effects, such as clothing, trunks, and things of that kind. He is also entitled to recover for the loss of any kitchen utensils, groceries and provisions which he may have lost."

It would have been error to give this, because it assumes that the goods for which the plaintiff claims damages were rightfully on the train, but this is challenged by the answer and constitutes an issuable proposition. The court had no right to assume the truth of a traversed allegation. The eleventh assignment of error relates to the measure of damages, but was substantially covered by the general charge.

9. As a final ground of complaint against the proceeding below, the plaintiff says the court refused to give the following instruction:

"If you find that the engineers or conductors of the defendant company violated any of the rules of the company and that this violation was the proximate cause of the collision, then I instruct you that this violation of these rules may be considered by you as to whether or not the defendant company was negligent in the operation of these trains."

The only thing in the complaint alluding to rules is that the defendant, "whilst said outfit train was so standing, carelessly and negligently and in violation of its rules and regulations, failed to stop its freight train." To say that an act is in violation of its rules and regulations, without saying what those rules and regulations are, and stating the act itself, is to state a conclusion of law. It is not an allegation of fact. Hence there is no averment of negligence in respect to

the violation of rules calling for any such direction to the jury.

10. The cases of *Hecker* v. *Oregon R. & N. Co.,* 40 Or. 6, 12 (66 Pac. 270), and *Chadwick* v. *Oregon-Wash. R. & N. Co.,* 74 Or. 19, 28 (144 Pac. 1165), are cited in support of this contention. In the first of these cases the complaint showed that the defendant backed its train over a county road crossing at a high rate of speed, without ringing a bell or giving other alarm. In the Chadwick case the rules were pleaded by the defendant and the conduct of the plaintiff stated so that the court could determine whether the rule was broken. It is true, as stated in the Chadwick case, that where the rules of the company require a certain line of conduct, and the pleading shows a violation of those precepts, their text may be shown in connection with the conduct involved which is declared to be an infraction of them. To do so, however, there must be support for such a course in the pleading.

The contentions of the plaintiff, as stated by him in his complaint, were fairly presented to the jury, so far as we can discern from the record. In any event, we cannot say that there is no evidence to support the defense. Hence, there being no substantial error, there is no recourse but to affirm the judgment, leaving with the jury the responsibility for a wrong result, if there was one.    Affirmed.

McBride, C. J., and Benson and Harris, JJ., concur.