Argued November 22, affirmed December 27, 1921.

# YARBROUGH *v.* CARLSON.

(202 Pac. 739.)

**Evidence—Evidence of Plaintiff's Statement of Her Condition to Physician for Purpose of Treatment Competent.**

1. In an action for injury from colliding with an automobile, evidence of a physician that plaintiff complained of pain in her side, when narrating to him what she claimed to be her condition, and the locality and character of the pain, for the purpose of securing from the witness medical advice and treatment, was competent.

**Evidence — Physician's Opinion as to Permanency of Injury Competent.**

2. In action for injury from colliding with an auto at a crossing, where a physician testified that he had made physical examination, and required X-ray photographs to be taken to enable him to determine whether any injury appeared in plaintiff's intestines, the witness' conclusions as to the injury and opinion as to its permanency are competent.

**Damages—Plaintiff having Stated No Injury Prior to Collision, Evidence of Her Condition at Any Time from Injury to Trial Admissible.**

3. In an action for injury from colliding with an automobile, where plaintiff had stated that she had not suffered any injury prior to the collision, evidence of her physical condition at any time after the injury to the time of trial was admissible to show the extent and effect of the injury, if resulting from the negligence charged.

**Evidence—X-ray Photographs of Internal Injury Admissible.**

4. In personal injury action, where injuries claimed are internal, X-ray photographs, the accuracy of which has been established or conceded, are admissible to show plaintiff's physical condition after the injury.

**Damages—Evidence of Injury Held Sufficient for Jury.**

5. In action for injury from colliding with an automobile at a crossing, evidence of injury *held* sufficient for jury.

**Municipal Corporations — Rules for Travel Do not Include Pedestrians.**

6. The rules for vehicular travel on streets do not apply to pedestrians, and defendant's request to charge the jury with respect thereto was properly refused.

---

4. On use of X-ray photographs as evidence, see notes in 114 Am. St. Rep. 442; 1 Ann. Cas. 161; 10 Ann. Cas. 962; 8 A. L. R. 59; 51 L. R. A. (N. S.) 858.

**Municipal Corporations—Evidence of Negligence in That Defendant's Auto was Equipped With Weak Brakes Held Sufficient for Jury.**

7. In an action for injury from a collision with automobile, in which plaintiff alleged that defendant's automobile was equipped with weak and defective brakes, evidence *held* sufficient for jury.

**Municipal Corporations—Rule Stated for Auto Driver and Pedestrian at Crossing.**

8. The driver of an automobile, on approaching an intersection of streets, with the intention of turning thereat, is required to have his car under such control as to yield the right of way to a pedestrian who is crossing the intersection, and who is in the line of travel such automobile driver intends to take, or in such proximity thereto that, if he continues, he will reach the same in advance of the auto.

**Trial—Any Error in Instruction on Defendant's Duty to Stop or Control Auto at Crossing Cured by Charge as a Whole.**

9. In an action for injury from colliding with defendant's auto, an instruction that might be subject to the construction that it prematurely imposed upon defendant the duty to stop or control his auto, so as to permit plaintiff to cross in advance, when examined in connection with the entire charge, could not have misled the jury.

**Municipal Corporations—Degree of Care and Duty of Autoists to Pedestrian at Crossing Stated.**

10. Where plaintiff and defendant were traveling toward each other on the same street, and without some clear indication plaintiff could not have anticipated that defendant intended to turn across her path, and when he formed that intention and executed it, he was required to exercise reasonable care to avoid injuring plaintiff; and, if plaintiff had right of way, it was defendant's duty to reduce his speed, or stop, if necessary, to allow plaintiff to pass in safety.

From Multnomah: W. N. GATENS, Judge.

Department 2.

East Burnside Street and Grand Avenue in the City of Portland are intersecting streets; the one extends east and west and the other north and south.

---

8. On reciprocal duty of operator of automobile and pedestrian to use care at intersection of streets, see notes in 4 Ann. Cas. 400; 13 Ann. Cas. 463; 21 Ann. Cas. 652; Ann. Cas. 1916E, 666; 38 L. R. A. (N. S.) 487; 42 L. R. A. (N. S.) 1178.

On duty of pedestrian before crossing street to look for automobiles approaching on intersecting street, see note in 9 A. L. R. 1248.

Plaintiff and a male companion were walking north on Grand Avenue, crossing the west side of the intersection of the streets mentioned; defendant was traveling south on Grand Avenue, driving an automobile, and when plaintiff and her companion had reached a point between the double street-car tracks that occupy East Burnside Street and about the center of the street, defendant turned his automobile west into Burnside Street and collided with plaintiff.

Plaintiff charged in her complaint that the aforesaid collision and her resulting injuries were due to the negligent operation of his automobile by defendant; while defendant alleged that the collision resulted from plaintiff's negligence. Plaintiff recovered judgment against defendant in the Circuit Court. This appeal is from that judgment.        Affirmed.

For appellant there was a brief over the names of *Messrs. Olson, Dewart & Bain* and *Mr. H. A. Robertson*, with an oral argument by *Mr. Bain*.

For respondent there was a brief over the name of *Messrs. Manning & Beckman*, with an oral argument by *Mr. Beckman*.

McCOURT, J.—The trial court overruled numerous objections made by defendant's counsel to the introduction of evidence and also denied defendant's motions to strike out certain evidence to which defendant excepted.

Defendant assigns as error the action of the court in each instance. None of these assignments is well founded, but we will notice those that merit comment.

1. The authorities sustain the action of the court in permitting Dr. James H. Cerrico, a physician, to testify that plaintiff had complained of considerable

pain over her left side, when narrating to him what she claimed to be her condition, and the locality and character of her pain, for the purpose of securing from the witness medical advice and treatment: *Weygandt* v. *Bartle,* 88 Or. 310, 319 (171 Pac. 587); 8 R. C. L. 639.

2. Dr. Cerrico further testified that plaintiff had been under his care since July (about two months); that he had made a physical examination of her and had required X-ray photographs to be taken to enable him to determine whether any injury appeared to plaintiff's intestines, which photographs he had also examined. The court thereupon permitted the witness to state as a conclusion that: "There is a partial obstruction of the descending colon, due to a crushing injury, where adhesion is formed, and partially obstructed the colon. This patient was given sulphite and buttermilk; that caused the shadow in the X-ray, and shows an obstruction in the large intestine"; that the condition mentioned "would cause constipation, some bloating of the abdomen, more or less pain, and adhesions"; and upon being asked whether that trouble would be permanent or temporary, the witness testified: "I am of the opinion it would be permanent." The evidence recited was clearly admissible: 11 R. C. L. 609; 8 R. C. L. 635, 636; 6 Thompson on Negligence, § 7755.

3. Plaintiff introduced in evidence two X-ray photographs that had been taken about a week before the trial; plaintiff's injuries were received more than six months previously. Dr. Cerrico referred to these X-ray photographs when testifying as a witness for the plaintiff, and defendant requested the court to take the testimony from the jury. Thereupon the plaintiff called Dr. M. G. Woodward, who had taken the X-ray

photographs at the instance of Dr. Cerrico and as an aid to the latter in making a diagnosis of plaintiff's physical condition. Dr. Woodward testified and explained the photographs, and they were admitted in evidence over defendant's objection.

Dr. Cerrico was then recalled, and over defendant's objection, stated his conclusions respecting plaintiff's physical condition, basing them in part upon the conditions disclosed by the X-ray photographs. Defendant did not object that the X-ray photographs were inaccurate or lacked authentication, but his objection was limited to the point that the X-ray photographs were inadmissible without some affirmative evidence that the physical condition sought to be shown thereby had not resulted from some intervening injury or ailment; and that upon the same ground, testimony in explanation of what the photographs portrayed and expert opinions based thereon were inadmissible.

Having offered evidence that she had not suffered any physical ailment or injury prior to the collision with defendant's automobile, evidence of plaintiff's physical condition at any time after the injury to the time of the trial was admissible, to show the extent, nature and probable effect of the injury, subject to the qualification that the injury or physical impairment, if any, disclosed by such evidence was shown to have resulted from the negligence charged in the complaint: 17 Corpus Juris, 1031–1033.

4. X-ray photographs, the accuracy of which has been established or conceded, are admissible for the foregoing purpose: Case note, *Ligon* v. *Allen* (Ky.), 51 L. R. A. 858.

5. There was evidence in the case which warranted the jury in finding that the conditions shown by the photographs and testified to by Dr. Cerrico, had de-

veloped from the injuries received by plaintiff in the collision. Plaintiff had testified to physical impairment and to weakness and pain in her abdominal region, continuing from the time of the collision to the time of the trial, which in her testimony she attributed to the collision; plaintiff also introduced evidence to the effect that when she was knocked down by defendant's automobile, the car stopped with the front wheel thereof resting upon plaintiff's abdomen; that she was confined to her bed most of the time for eighteen weeks, as a result of the injuries received in the collision; that during that time she complained of pains in her abdomen and back, and passed blood from her intestines every day, and passes such blood yet at times; that she could not take any food for two weeks or more after the injury; that there is a pain in her stomach nearly all of the time, which at times causes a high fever and renders plaintiff unconscious; and that she has not been free from that pain since the accident.

The court did not commit error, as claimed, in denying defendant's motion for nonsuit. The evidence was amply sufficient to take the case to the jury.

Defendant separately assigns error upon the refusal of the court to give four related requests for instructions.

6. In addition to recitals and conclusions in conformity with defendant's theory of the case, each such request contained a direction to the effect that in the situation of the parties, defendant had the right of way over plaintiff and had the right to proceed along East Burnside Street, and it was the duty of plaintiff to stop and allow defendant to pass. By the requests under discussion defendant sought to

apply to pedestrians and automobiles crossing each other's line of travel, the rules of the road adopted by legislative enactment for the guidance of vehicular traffic, to which they are expressly limited. It is at once manifest that the rules mentioned do not apply to pedestrians and therefore the requests to charge the jury in respect thereto were properly refused.

7. Defendant requested the court to direct the jury that plaintiff had failed to introduce any competent evidence to prove that the brakes on his automobile were defective, and that the jury should not return a verdict against defendant upon the theory that defendant's automobile was equipped with defective breaks. The court refused the request and submitted that phase of the case to the jury. Defendant assigns error upon the refusal of the court to give defendant's requested instruction, and upon the instruction given.

It is alleged in the complaint, and denied in the answer, that defendant's automobile was equipped with weak and defective brakes; that defendant was negligent in that respect, and that such negligence resulted in the injury of which plaintiff complains.

Plaintiff introduced evidence to show the speed at which defendant was driving both before and at the time of the collision, the manner of his operation of the car at the time, including the braking apparatus thereupon, and the distance plaintiff was dragged or propelled along the street before defendant stopped. Plaintiff also testified that on one occasion after the collision, defendant stated to plaintiff that he had defective brakes and could not avoid the collision. In view of the foregoing evidence, the issue of negligence arising upon the charge in the complaint that defendant's automobile was equipped with weak and

defective brakes was one to be determined by the
jury. The court was therefore authorized to give the
instruction complained of, and warranted in refusing
defendant's requested instruction.

8. The court gave the jury the following instruc-
tion:

"If you find that the plaintiff was engaged in cross-
ing Burnside Street before the defendant reached the
intersection of Burnside Street, then I instruct you
that it was the duty of the defendant to have his
automobile under such control at the crossing so as
to seasonably and efficiently yield to the plaintiff the
right to use the crossing first acquired by her. If
he failed to do so he would be negligent."

Defendant assigns the giving of the above instruc-
tion as error, and complains that the rule expressed
by the instruction is unreasonable in that it would
compel the driver of an automobile approaching an
intersection to stop his automobile and wait until a
pedestrian, who had just entered the intersection,
had traveled the entire distance across the same, be-
fore he could safely proceed. The driver of an auto-
mobile upon approaching an intersection of streets
with the intention of turning thereat is required to
have his car under such control as to yield the right
of way to a pedestrian who is crossing the intersection
and who is in the line of travel such automobile driver
intends to take, or in such proximity thereto that if
he continues, he will reach the same in advance of the
automobile.

9. In other parts of his charge to the jury, the
court carefully and closely defined and limited de-
fendant's liability, and clearly and fully directed the
jury that both the operators of automobiles and
pedestrians upon the public streets have an equal

right to the reasonable use of the public highways, and that their rights are reciprocal, and each must use due care when so using the streets, to prevent injuring the other; that it is the duty both of pedestrians and those in charge of vehicles to exercise reasonable care in observing the approach of each other so as to avoid collisions. The duty of care resting on plaintiff for her own safety was defined in unusual detail and the jury were directed that plaintiff's failure to observe the same entitled defendant to a verdict.

While perhaps the instruction, standing by itself, might be subject to the construction that it prematurely imposed upon defendant the duty to stop or control his automobile so as to permit plaintiff to cross the intersection in advance of his automobile, yet when examined in connection with the entire charge given by the court, it is manifest that it could not have misled the jury.

10. Plaintiff and defendant were traveling towards each other upon the same street. Without some clear indication, plaintiff could not reasonably have anticipated that defendant intended to turn across her path, and when he formed that intention and proceeded to execute it, he was required to exercise reasonable care to avoid colliding with plaintiff, and if she was about to cross the path he intended to take in making the turn, or in such proximity thereto that she would reach the same before he did, it was his duty to reduce his speed, or stop if necessary, in order to allow her to pass in advance of him with safety: *Switzer* v. *Baker,* 178 Iowa, 1063 (160 N. W. 372).

In the situation presented by the evidence, plaintiff was near the center of East Burnside Street, upon

the crossing where she had a right to be, when the defendant, who had been traveling south on Grand Avenue, upon reaching the intersection suddenly turned west and collided with plaintiff. There was nothing in the evidence nor in the instruction that could have engaged the jury in considering the duty of defendant when plaintiff first stepped off the curb into the intersection, nor at any other place or time than near the center of the street and at the time the collision occurred.

There was evidence which warranted the instruction given by the court with regard to the accelerator mechanism of defendant's automobile, and no error was committed by the court in that respect.

Finding in the record no reversible error, the judgment of the Circuit Court is affirmed.          AFFIRMED.

BURNETT, C. J., and BEAN and BROWN, JJ., concur.