Submitted on briefs November 15, affirmed December 13, 1927.

# W. O. NISLEY v. SAWYER SERVICE, INC.

### (261 Pac. 890.)

**Municipal Corporations—Pedestrian, Struck by Automobile While Going to Sidewalk from Street-car Safety Island, Held not Contributorily Negligent as Matter of Law.**

1. Under the evidence, in action for injury to pedestrian who was struck by automobile while walking a distance of ten feet to sidewalk from a safety island on which he had just alighted from a street-car, *held*, that it could not be said as matter of law that he was guilty of contributory negligence, so as to authorize granting of nonsuit.

**Municipal Corporations—Driver of Automobile Held not Conclusively Free from Negligence Because Within Maximum Speed Permitted (Laws 1925, c. 165, § 2, Subd. 16).**

2. That driver of automobile was within the twenty miles maximum speed allowed by law in cities between street intersections is not conclusive that he was free from negligence; the same statute (Laws 1925, c. 165, § 2, subd. 16), providing that every driver shall drive carefully, and in no case at a speed that will endanger another.

**Municipal Corporations—"Safety Island" at Middle of Block Held Regular Crossing for Street Railway Passengers Within Ordinance Limiting Crossings.**

3. A so-called safety island, a platform to facilitate loading and unloading street railway passengers, being placed in the street near the middle of a block by the city, or with its permission, a passenger who goes directly from it to the sidewalk, a distance of ten feet, does not violate an ordinance providing that pedestrians shall refrain from crossing streets within the restricted district, except at regular crossings.

**Municipal Corporations—Automobile Operators must Proceed With Utmost Caution to Avoid Injuring Street-car Passenger Passing from Safety Island to Sidewalk.**

4. It is the duty of automobile operators to proceed with utmost caution to avoid injuring a passenger from a street-car, who, after alighting from the car on a safety island, is passing from it to the sidewalk.

---

2. Negligence as to speed as affecting liability of owner of motor vehicle for injury to person who has alighted from or is waiting for a street-car, see note in 47 **A. L. R.** 1258.

Municipal Corporations — Whether One Proceeding from Safety Island to Sidewalk was Guilty of Negligence in not Discovering Automobile Held Question for Jury.

5. Whether or not plaintiff, who, after alighting from a street-car on a safety island, while proceeding from such platform to the sidewalk, a place where he had equal rights with automobiles, was struck by an automobile, was guilty of contributory negligence in not discovering it before it struck him, *held*, under the evidence, a question for the jury.

Muncipal Corporations—Street-car Passenger, Alighting at Safety Island, Held not to Violate Ordinance Requiring Cars to Discharge Passengers or Near Side of Street.

6. A street-car passenger, alighting at a safety island placed in middle of block by permission or direction of the city where car regularly stopped to discharge and take on passengers, cannot be said to be violating an ordinance requiring street-cars to discharge passengers on the near side of a street.

---

Motor Vehicles, 42 C. J., p. 925, n. 69, p. 1037, n. 55, p. 1148, n. 50, 53, p. 1267, n. 11, p. 1268, n. 17.

From Multnomah: GEORGE ROSSMAN, Judge.

In Banc.

Plaintiff was injured by defendant's automobile while driven by its employee. Plaintiff at the time was passing from a "safety island" on Third Street to the sidewalk, a distance of about 10 feet. He had just alighted from a street-car. The "safety island" was a street-car loading platform at that time about one foot above the surface of the street. Its northerly end was 41 feet south from the property line of Morrison Street and extended southerly parallel with the street-car tracks on Third Street, a distance of 55 feet. Plaintiff testified that he looked northerly for the approach of automobiles as far as the northerly end of the platform and no car was then in sight. He alighted from the front end of the street-car near the southern end of the platform and started directly at right angles toward the sidewalk along the western border of Third Street. A witness

who was standing on the sidewalk testified that the car which struck plaintiff was coming at a rapid rate of speed, to wit: about 20 miles per hour. Other people were passing from the same platform to the sidewalk on the west side of Third Street at the time. A street-car had just stopped at the platform and had unloaded a number of passengers. Defendant claims that its car was being driven carefully and slowly, that plaintiff without looking stepped immediately in front of the car, and that it was impossible to avoid striking him under the circumstances. The defense is contributory negligence. Plaintiff recovered judgment.                                      AFFIRMED.

For appellant there was a brief over the names of *Messrs. Carey & Kerr, Mr. Omar C. Spencer* and *Mr. Marvin K. Holland.*

For respondent there was a brief over the name of *Mr. E. L. McDougal.*

COSHOW, J.—1, 2. The first and principal error assigned is the ruling of the court denying defendant's motion for a nonsuit. The contention of defendant in this regard is that since the automobile struck plaintiff it is indisputable that it was in the range of his vision when he started to go from the "safety island" to the sidewalk; that plaintiff was guilty of negligence either in not looking carefully and thoroughly for his own safety or in not looking at all before he stepped from the platform into the street on his way to the sidewalk. Plaintiff testified that the first he saw of the automobile it was coming at a rapid rate of speed and was right on him. He had neither opportunity nor time to dodge it. He

also testified that he looked before he stepped from the platform as far north as the end of the platform, about 50 feet distant. Plaintiff had only 10 feet to go to be on the sidewalk. Plaintiff was corroborated by a disinterested witness to the effect that the automobile was traveling at a rapid rate of speed. This is denied by the driver and he is corroborated by the driver of another automobile immediately behind him. There is a conflict of testimony. We cannot say as a matter of law that plaintiff was guilty of such contributory negligence as would prevent him from recovering because he did not see the oncoming automobile. The accident occurred in a congested district of the City of Portland. The intersection of Morrison and Third Streets is one of the busiest intersections of the city. A traffic policeman stood in the center of the intersection directing traffic. This is done only in the busiest intersections of that city. The fact that the law permits a maximum of 20 miles per hour in cities between intersections of streets is not conclusive that a driver of an automobile is free from negligence in driving at that rate of speed. The same statute which authorizes that rate of speed also provides:

"Every person operating a motor vehicle * * shall drive the same in a careful and prudent manner, * * and in no case at a rate of speed that will endanger the property of another, or the life and limb of any person; * * ." Gen. Laws, 1925, Chapter 165, subd. 16.

One may drive prudently at places at a speed of 30 miles per hour, and not drive in a careful manner at a speed of even 5 miles per hour under other conditions. It does not follow that because the maximum limit at the place where defendant's automobile

was being driven was 20 miles per hour that defend-
ant should operate his automobile at such a high
rate of speed. The conditions of traffic in the place
the automobile was being operated must always be
taken into consideration in order to determine the
rate of speed due care and prudence will permit.

3–5. The "safety island" was either placed in the
street by the city or with its permission. It was not
at an intersection of two streets but was near the
middle of the block between Morrison and Yamhill
Streets. It was placed in the street to facilitate load-
ing and unloading passengers. The "safety island"
would be of no benefit if the passengers were not per-
mitted to pass from the sidewalk to the island and
from the island to the sidewalk. It cannot be said
that a passenger on a street-car who passes from the
island directly to the sidewalk, thereby traveling a
distance of 10 feet, is violating a city ordinance be-
cause he is crossing the street at a place other than
an intersection. A person passing from the island to
the sidewalk is crossing part of the street at a place
designated by the city authorities or under their
supervision. The ordinance provides that pedes-
trians shall refrain from crossing streets within the
restricted district, except at the regular crossings and
at right angles. Plaintiff was crossing at right
angles the part of the street between the platform
and the sidewalk. If it be conceded that he was
crossing the street within the meaning of that term as
used in the ordinance of the City of Portland, then
we must conclude that he was crossing at a regular
crossing because we cannot conceive that the city
in order to protect the lives and limbs of its citizens
would require a person to travel longitudinally along
the street more than 40 feet and then be as far from

the sidewalk as he was from the place from which he started. To do so would be to require the citizen unnecessarily to take the extra hazard of walking near the center of the street in the midst of the traffic in a congested and restricted district and then at right angles through the traffic to the sidewalk. A street-car had just unloaded passengers at the "safety island." It was the duty of all automobile operators to proceed with the utmost caution to avoid injuring a passenger while passing from the "safety island" to the sidewalk. Plaintiff had all of the right to cross from the island to the sidewalk that the defendant had to operate his car between the platform and the sidewalk. Whether or not plaintiff was guilty of negligence in not discovering the automobile before it struck him is a question of fact for the jury under all circumstances: *Wolf* v. *City Ry. Co.,* 50 Or. 64 (85 Pac. 620, 91 Pac. 460, 15 Ann. Cas. 1181); 50 Am. & Eng. Ruling Cases (N. S.) 213). Most of the cases relied upon by defendant are railroad cases. There is a difference between injuries received on a railroad track and those received from an automobile at a place where the injured party has equal rights with the automobile. A railroad train always has the right of way on its own tracks. One who goes upon a railroad track must use due care to protect himself because a railroad train must follow the rails. It travels at a high rate of speed generally and is unable to stop within a short distance, but even a railroad train must operate with due care for the safety of others when operating in a congested district where its tracks are crossed by public highways. In the instant case defendant had no right of way over plaintiff. Plaintiff was as much entitled to cross

from the island to the sidewalk at right angles, as he was doing, as he would have had at an intersection. By placing the island where it was the public was given the right to pass from the island to the sidewalk and *vice versa* as occasion required.

We recognize the principle that a pedestrian must exercise due care for his own safety before going into a street used by vehicular traffic. He is bound to use such care as an ordinary prudent person would use. The driver of an automobile is required to use the same degree of care. The operator of an automobile has not the right, because he is operating a powerful machine, to take the right of way from the pedestrian who is using the highway lawfully.

6. It is also contended that plaintiff alighted from the street-car on the far side of the street. The ordinance requires the street-cars to discharge passengers on the near side. Defendant in presenting this argument assumed that the platform was intended for south-bound cars to discharge passengers bound for Morrison Street. The evidence does not support that contention. The platform was near the middle of the block. The platform was there by permission or direction of the city. Street-cars were regularly stopping at that platform, both to discharge and to take on passengers. Nobody then has a right to say that plaintiff was violating a statute and the ordinance because he alighted from the street-car on that platform. Doubtless the platform was placed there and was being used for the purpose of promoting the safety of pedestrians. One so using it then could not be said to be violating the city ordinance requiring the street-cars to discharge passengers on the near side of the street.

It does not appear from the record that plaintiff was required by the city ordinance to observe and obey the signals of the traffic officer stationed at the center of the intersection of the two streets. On the contrary the traffic officer testified that he could not attempt to do anything but to direct the traffic through the intersection. There was nothing to hinder the operator of the automobile from even stopping his automobile after he got through the intersection of the street and on the south side of Morrison Street so as to permit the passengers who had alighted from the street-car to go in safety to the sidewalk. He should have done so if that was necessary to have avoided injuring any of the pedestrians.

Complaint is also made of certain instructions given and other requested instructions refused. We find no error on the part of the learned judge presiding at the trial in regard to the instructions. The instructions were as favorable to the defendant as it was entitled to. It would be of no benefit to anybody to set out the particular parts of the instructions complained of. What has been written covers the legal principles invoked by defendant.

The judgment is affirmed.     AFFIRMED.

ROSSMAN, J., did not participate in this opinion.